UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIK HARPER,

    Plaintiff,

v.                                           Case No. 2:07-cv-201
                                                 HON. ROBERT HOLMES BELL

JAMES VILGOS, et al.,

    Defendants.

_____/

**REPORT AND RECOMMENDATION**

        Plaintiff Erik Harper filed this prisoner 42 U.S.C. § 1983 action against defendants James Vilgos, Jeff White and Dave Burnett. Plaintiff complains that he was denied religious meals necessary to practice Buddhism. Plaintiff was receiving a strict vegetarian meal in accordance with his Buddhist practice. However, plaintiff was removed from the strict vegetarian meal program on April 14, 2005, after he purchased meat and dairy products from the prison store. Plaintiff states that he never attended a hearing or received a Notice of Intent to conduct an administrative hearing to remove him from his religious diet. The Administrative Hearing Report, dated April 14, 2005, indicates that plaintiff was present and made the statement that "I purchase meat products to give to other prisoners to exchange items with them."

        On April 23, 2007, plaintiff met with defendant Vilgos for an interview regarding his request for a strict vegetarian diet. Defendant Vilgos stated that plaintiff "inadequately conveyed knowledge of Buddhism and its dietary requirements. His responses were very brief and uninformative. His written account was a better explanation, but he could not present the same ideas

at the interview." Defendant Vilgos was aware that plaintiff had purchased meat and diary products when he was receiving a strict vegetarian diet. Further, defendant Vilgos felt that plaintiff's attendance at Buddhist services had been disruptive because he spent his time talking more about grievances and lawsuits during the religious service.

Defendants and plaintiff move for summary judgment. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Plaintiff alleges that his First Amendment rights were infringed by the denial of a religious meal. Prisoners do not lose their right to freely exercise their religion by virtue of their incarceration. *Cruz v. Beto*, 405 U.S. 319, 322, n. 2 (1972). Freedom of religion being a fundamental right, any regulation which infringes upon it must generally be justified by a "compelling state interest". *See*, *for example*, *Wisconsin v. Yoder*, 406 U.S. 205 (1972). However, as a prisoner, plaintiff's constitutional rights are subject to severe restriction. *See*, *for example*, *Bell v. Wolfish*, 441 U.S. 520 (1979) (restriction on receipt of reading materials); *Hudson v. Palmer*, 468 U.S. 517 (1984) (privacy); *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974) (right to call witnesses); *Richardson v. Ramirez*, 418 U.S. 24 (1974) (vote). *See*, *generally*, *Washington v. Harper*, 494 U.S. 210 (1990); *Turner v. Safley*, 482 U.S. 78 (1987); *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987).

Rather, the standard by which prison regulations impinging on prisoner constitutional rights is judged is "reasonableness." *Turner*, 482 U.S. at 88-95; *Washington*, 494 U.S. at 223-25. In *Turner*, the Supreme Court expressly rejected any degree of "heightened scrutiny" in order to assure that "prison administrators . . . and not the courts . . . make the difficult judgments concerning institutional operations." *Id.* at 89, *quoting Jones v. North Carolina Prisoners' Union*, 433 U.S. 119 (1977).

In *Turner*, the court set forth four factors "relevant in determining the reasonableness of the regulation at issue." 482 U.S. at 89-91. First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it. *Id.* at 89, *quoting Block v. Rutherford*, 468 U.S. 576, 586 (1984). Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate." *Turner*, 482 U.S. at 90. Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on

the allocation of prison resources generally." *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoner's rights is relevant to reasonableness. *Turner*, 482 U.S. at 90.  As stated by the court, this final factor "is not a 'least restrictive alternative' test." *Id.* at 90.  "Prison officials need not show that "*no* reasonable method exists by which [prisoners'] rights can be accommodated without creating bona fide [prison] problems." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987).The court is not required to weigh evenly or to explicitly consider each of the four *Turner* factors.  *Spies v. Voinovich*, 173 F.3d 398, 403 (6th Cir. 1999)(denying vegan diet to prisoner did not violate prisoner's First Amendment rights).  The Sixth Circuit explained:

> By creating the *Turner* test, the Supreme Court surely did not intend to provide a mechanism through which prisoners could mount repeated challenges to prison regulations and require courts to analyze, in detail, the impact such regulations would have in any particular factual setting, even if prior court precedent would seem to dictate the validity of the regulations.  On the contrary:  the Supreme Court's creation of the *Turner* standard was motivated by a desire to "ensure[ ] the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, and avoid[ ] unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree."  *O'Lone*, 482 U.S. at 349, 107 S.Ct. 2400 (quotation marks omitted).  Penal authorities may need a clear rule for dealing with certain continuing or recurring situations, even when that rule could be better-tailored to the rights of individual prisoners through a court's flexible, case-by-case analysis.

*Id.* at 404.

The MDOC offers a strict vegetarian diet for religious reasons to groups including Buddhists.  Policy Directive 05.03.150 provides, in part:

> TT.  A prisoner may eat from a religious menu only with approval of the CFA Special Activities Coordinator.  Approval shall be granted only if it is necessary to the practice of the prisoner's designated religion.  To request approval, the prisoner must submit a written

request to the Warden, TRV Manager, or designee, as appropriate, who shall obtain information regarding the prisoner's request and religious beliefs prior to referring the request to the CFA Special Activities Coordinator. The CFA Special Activities Coordinator shall notify the Warden, TRV Manager or designee, as appropriate, of a decision; the Warden or TRV Manager shall ensure that the prisoner is notified. A prisoner whose request is denied shall not be allowed to submit another request to eat from that religious menu for at least one year.

The prison policy is constitutional. The prison is entitled to create some standard to determine whether a prisoner is entitled to a religious meal. Providing special meals to prisoners is more costly than providing a standard meal. Some prisoners may make requests for a religious meal simply to manipulate a transfer to a different prison. Determining the sincerity of a religious belief is a difficult task. Plaintiff was removed from the Buddhist diet because he purchased meat and diary products from the prison store. In addition, defendant Vilgos interviewed plaintiff and believed that plaintiff did not have a full understanding of his Buddhist beliefs, and was disruptive during religious services. Moreover, there existed an alternative means for plaintiff to exercise his dietary beliefs. Plaintiff could select the non-meat option at meal time.

Plaintiff also claims that defendants' conduct violated his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1. Section 2000cc-1 of the RLUIPA states:

(a)   General Rule

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 1997 of this title, even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person–

(1)   is in furtherance of a compelling governmental interest; and

- 5 -

>   (2) is the least restrictive means of furthering that compelling governmental interest.

This rule applies solely in cases where the "substantial burden is imposed in a program or activity that receives Federal financial assistance," or where the burden affects "commerce with foreign nations, among the several States, or with Indian tribes." 42 U.S.C. § 2000cc-1(b). If plaintiff has a sincere religious belief, then failing to provide him a religious based diet could qualify as a substantial burden on plaintiff's right to practice his religion.

In this case, under a totality of the circumstances approach, defendants have articulated valid reasons which justify the refusal to provide plaintiff a Buddhist diet. In the opinion of the undersigned, defendants have set forth valid reasons to deny plaintiff's request for a religious meal. Based upon plaintiff's interview and the information gathered by defendants, it was not unreasonable to deny plaintiff's request. Accordingly, defendants' determination that plaintiff showed a lack of sincerity should not be disturbed by this Court. In the opinion of the undersigned, typically it is difficult for a defendant to establish that a plaintiff's religious belief is not sincerely held. However, prisoners are not automatically entitled to specific religious accommodations just by claiming an entitlement. The prison must maintain some aspect of control in accommodating prisoners' needs. Defendants have the right to make sure that each prisoner is sincere in his belief before allowing a prisoner access to a religious based meal program. It is recognized that this is a very difficult task to undertake. However, simply memorizing some basic requirements is not enough to show a sincere belief or need for a religious diet. Under the circumstances of this case, especially when plaintiff already has meal options to accommodate his beliefs, it is the opinion of the undersigned that defendants correctly considered plaintiff's sincerity and made an appropriate

and well reasoned decision under the totality of facts available. In the opinion of the undersigned, defendants are entitled to summary judgment on plaintiff's claims.

Plaintiff claims that his due process rights were violated because he was not given notice of an administrative hearing or given an administrative hearing before he was removed from his strict vegetarian diet. It appears that plaintiff did receive a hearing and attended that hearing. Plaintiff may have been dissatisfied with the hearing that he received and may not have understood that he was having a hearing. However, the record establishes that there was a hearing, plaintiff attended the hearing, and plaintiff made a statement during the hearing. Moreover, plaintiff cannot establish a violation of his due process rights   Prior to *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Supreme Court's decision in *Hewitt v. Helms*, 459 U.S. 460 (1983), provided the controlling law for determining whether a state statute granted prisoners a federally cognizable liberty interest. The Court held that the State created a protected liberty interest because the statute contained "explicitly mandatory language" that placed substantive limitations on the discretion of prison officials to place prisoners in segregation. *Id.* at 472. In *Sandin*, the Supreme Court revisited the issue of how to determine whether a state statute grants prisoners a liberty interest protected by the Due Process Clause. Like *Hewitt*, the case involved disciplinary segregation for a prisoner who had committed a misconduct. In *Sandin*, the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995). The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest because the segregation

at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. In the opinion of the undersigned, removing a prisoner from a strict vegetarian diet when a regular vegetarian diet is still available is not an atypical and significant hardship imposed on a prisoner.

Alternatively, it is recommended that plaintiff's monetary damage claims be dismissed under qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in

question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40. *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

The Sixth Circuit has observed:

> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus qualified immunity is not triggered only where the very action in question was previously held unlawful. *Anderson*, 483 U.S. at 639-40. Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights. *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983. Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty. *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten). *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983) (police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are

entitled to the defense of qualified immunity because plaintiff cannot establish that defendants violated his constitutional rights.

Accordingly, it is recommended that the motion for summary judgment filed by defendants Burnett and Vilgos (Docket # 20) be granted, the motion for summary judgment filed by dnd Defendant White (Docket #33) be granted, and this case be dismissed in its entirety. It is further recommended that plaintiff's motion for summary judgment (Docket #44) be denied and plaintiff's motion to amend his complaint (Docket #27) be granted.[1]

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $455 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $455 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal.

---

[1] This Report and Recommendation considered the two additional issues raised for the first time in plaintiff's motion to amend his complaint, which are a First Amendment issue and a Fourteenth Amendment due process issue.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).


      /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   February 18, 2009